**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JOHN H. THORNTON and KATHLEEN
THORNTON,

                        Plaintiffs,                No. 07-CV-761

        v.                                    (DRH)

SHAKER RIDGE COUNTRY CLUB, INC.; FRANKIE
COCOMAN, Board Member; MICHAEL DeSANTI,
Board Member; GAVIN DONOHUE, Board Member;
CANDACE MALONEY, Board Member; JIM REID,
JR., Board Member; FRANK SCIOTTI, Board
Member; TOM WRONOWSKI, Board Member;
ROGER JONES, President; DEAN RUECKART,
Vice President; JACK HARDY, Vice President;
JOHN McLAUGHLIN, Secretary; and BOB KIND,
Treasurer,

                        Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

JOHN H. THORNTON
Plaintiff Pro Se
No. 13147-052
Devens Federal Medical Center
Post Office Box 879
Ayer, Massachusetts 01432

KATHLEEN THORNTON
Plaintiff Pro Se
87 Homewood Avenue
Watervliet, New York 12189

GOLDBERG SEGALLA LLP             JONATHAN M. BERNSTEIN, ESQ.
Attorney for Defendants               WILLIAM J. GREAGAN, ESQ.
8 Southwoods Boulevard
Suite 300
Albany, New York 12211-2526

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

Plaintiffs pro se, John H. Thornton ("Thornton") and his wife, Kathleen Thornton, bring this action against  defendants Shaker Ridge Country Club, Inc. and its twelve board members (collectively "SRCC") alleging that (1) SRCC discriminated against the Thorntons as Christians when the Thorntons' membership in SRCC was terminated in violation of 42 U.S.C. § 2000a, (2) SRCC committed tax fraud in violation of 26 U.S.C. § 501(c)(7) and 26 C.F.R. § 1.501(a)-3, and (3) SRCC defrauded the Thorntons in violation of state law. Compl. (Docket No. 1).[1]  The Thorntons seek compensatory and punitive damages, reinstatement as members of SRCC, and liquidation of SRCC and the distribution of the proceeds thereof to SRCC members.

Presently pending is SRCC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Docket No. 6.  The Thorntons have opposed the motion.  Docket No. 19.  For the following reasons, it is recommended that SRCC's motion be granted.


## I.  Background

The facts are related herein in the light most favorable to the Thorntons as the non-moving parties.  See subsection II(A) infra.

On September 20, 2001, federal agents executed a search warrant at the Thorntons' residence in Albany County and seized various items of child pornography.  Thornton v. United States, No. 06-CV-1252 (GLS), 2007 WL 3197071 at *1 (N.D.N.Y. Oct. 26, 2007). On April 19, 2005, Thornton waived indictment and pleaded guilty in this district to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  See United

---

[1]Unless otherwise indicated, all references to "Docket No." refer to the docket filings of the above-captioned case.

States v. Thornton, No. 05-CR-115 (GLS), Docket Nos. 2-4.  On September 12, 2005,

Thornton was sentenced principally to five years incarceration and was remanded to

commence service of his sentence.  Id. at Docket Nos. 27-29.  Thornton presently remains

incarcerated serving that sentence.[2]

At the time of Thornton's guilty plea, he and his wife had been members of SRCC, a

private country club located outside Albany, for twenty-three years. On the day following the

guilty plea, SRCC received an electronic mail message expressing "concern[] for the safety

and welfare of the children of the members, their guests, and friends."  Docket No. 19,

attachment 2, Ex. C at 2.  On May 20, 2005, defendant Jones, the SRCC President, sent

Thornton a letter stating that "with a quorum present, by a 2/3 vote, after a hearing . . . at

which you were present, [the board] made a determination to expel [Thornton] and

terminate [his] membership effective Monday, May 23 . . . ."  Docket No. 6, attachment 4,

Ex. 1.  The expulsion from SRCC resulted in the Thorntons being precluded from

participating "in outside events, be[ing] a guest of a member or play[ing] in tournaments."

Id.; Compl. at ¶ 19.  This action followed.


## II.  Discussion

In their complaint, the Thorntons allege that SRCC (1) discriminated against Thornton as

---

[2]On October 13, 2006, Thornton filed a petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2255 seeking to vacate his sentence and conviction on the ground that his
guilty plea had been involuntary.  See Thornton v. United States, No. 06-CV-1252 (GLS)
(N.D.N.Y. filed Oct. 13, 2006).  In a decision filed October 26, 2007, that petition was
denied. Id. at Docket No. 22; see also 2007 WL 3197071 (N.D.N.Y. Oct. 26, 2007).
Thornton's appeal from that denial remains pending.  See Thornton v. United States, No.
07-5061 (2d Cir. filed Nov. 1, 2007).

Christians by terminating Thornton's membership and prohibiting him from attending religious events at SRCC (second cause of action), (2) committed tax fraud (first cause of action), and (3) defrauded the Thorntons and denied them due process of law by terminating Thornton's membership (third, fourth, and fifth causes of action).  SRCC moves to dismiss these claims on the grounds that (A) the Thorntons fail to state a claim for discrimination; (B) the Court lacks jurisdiction over the tax fraud claim; (C) the Thorntons have no standing to assert the tax fraud claim; (D) SRCC's board members should be dismissed in their individual capacity; and (E) if the discrimination and tax fraud claims are dismissed, the pendent state law claims should also be dismissed.[3]

## A. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of

---

[3] SRCC has set forth multiple reasons to grant the motion to dismiss.  While most appear persuasive, this decision only addresses the first, second, and last grounds.  Since the motion to dismiss is granted on those grounds, SRCC's remaining contentions will not be addressed.

facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).


## B. Failure To State A Claim

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the . . . services, facilities, privileges, . . . and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  A place of public accommodation includes "[e]stablishments affecting interstate commerce . . ." such as a "restaurant . . . , lunch counter . . . , or other facility principally engaged in selling food for consumption on the premises . . ." or "any . . . place of exhibition or entertainment."  Id. § 2000a(b).  However, this provision does "not apply to a private club . . . ."  Id. § 2000a(e).  In determining "whether an establishment is . . . a private club, there is no single test."  New

York ex rel. Abrams v. The Ocean Club, Inc., 602 F. Supp. 489, 494 (E.D.N.Y. 1984).  In

evaluating whether a place is a private club or public accommodation, the factors to

consider are whether the establishment

> (1) has permanent machinery established to carefully screen applicants on
> any basis or no basis at all, i.e., membership is determined by subjective,
> not objective factors; (2) limits the use of facilities and the services of the
> organization to members and bona fide guests of members; (3) is controlled
> by the membership; (4) is non-profit and operated solely for the benefit and
> pleasure of the members; and (5) directs its publicity exclusively and only to
> members for their information and guidance.

Id. at 495 (citations omitted).

    In this case, SRCC claims that it is a private club and not subject to the Title II

provisions.  SRCC has a permanent machinery established to screen applicants.  Thus, it

appears that SRCC does exhibit selectivity when offering membership to applicants.

Applicants must include signatures of "any two members of the club" on their applications

and meet for "a personal interview with [the Membership Committee and the applicant's]

spouse, or significant other."  SRCC Const. (Docket No. 6, attachment 6) art. V, § 3.  The

applicant must meet the "Board members prior to any regular Board meeting," be approved,

and pay "initiation fees, dues, and other membership charges . . . ."  Id. §§ 3 & 4.[4]

Additionally, SRCC has a very detailed governance structure headed by a Board of

Governors who are elected member volunteers.  Id. arts. II & III.

---

[4] Courts have placed great weight on the first factor, the selectivity of the club.
Tillman v. Wheaton Haven Recreation Ass'n, 410 U.S. 431, 438 (1973).  However, "a
formal procedure requiring nothing more than membership approval is insufficient to show
genuine selectivity."  United States v. Lansdowne Swim Club, 894 F.2d 83, 86 (3rd Cir.
1990) (citing Tillman, 410 U.S. at 438-39).  Thus, based on the current submissions, it
appears that SRCC is screening members based on subjective factors; however, if the
interviews delve no deeper than cursory introductions and approvals, the process would
be deemed insufficient.

However, SRCC does not limit the use of its facilities and services only to members and guests of members.  SRCC advertises in telephone books that its banquet facilities are open to the public and that no membership is required to reserve space at the club.  Docket No. 6, attachment 4, Ex. 3.  This includes social functions, such as weddings.  Id., Ex. 5. Additionally, at least one community website lists the SRCC golf course as "semi-private," indicating that it is not solely for the use of SRCC's private members.  Docket No. 6, attachment 5, Ex. 21.  Such listings in the public domain demonstrate that SRCC was not directing its public communications exclusively toward its members.  This also indicates the polar opposite -- that SRCC was soliciting the public to enjoy the use of the facilities for the public's benefit and this "use of the facility by non-members undercut[s SRCC]'s claim that it is a private club."  Lansdowne Swim Club, 894 F.2d at 86.  Therefore, balancing the three factors described above against the selectivity of membership, it cannot be said that the selection process outweighs the overwhelming accessibility of the club to the public. Accordingly, SRCC cannot claim the private club exception.

Because SRCC is not a private club, SRCC must be a public accommodation affecting interstate commerce in order to be liable for discrimination under Title II.  Viewing the facts in the light most favorable to the Thorntons, SRCC was a place of public accommodation due to the snack shack located on the premises and an annual invitational golf tournament. The snack shack was open to the public and sold food primarily for consumption at the club. See Docket No. 19 at 11.  Ingredients in the food being sold at the snack bar "were probably obtained . . . from out of state sources."   Daniel v. Paul, 395 U.S. 298, 305 (1969) (citations omitted).  Additionally, since SRCC hosted corporate and social events which were advertised through the internet and telephone books, SRCC served individuals from

out-of-state.

Thus, the establishment affected interstate commerce because the food and customers both moved through it.  Therefore, "[t]he presence of a snack [shack] on the premises of a recreational club automatically brought the entire club facility within the ambit of Title II . . . ." Thomas v. Tops Friendly Markets, Inc., No. 96-CV-1579, 1997 WL 627553, at *3 (N.D.N.Y. Oct. 8, 1997) (citing Daniel, 395 U.S. at 305).  The same analysis compels the conclusion that if there is a place of entertainment within the club, the entire establishment becomes a public accommodation.  See Olzman v. Lake Hills Swim Club, 495 F.2d 1333, 1340 (2d Cir. 1974) (finding that a swimming pool qualified as a place of entertainment and, in conjunction with a snack shack and social gatherings, rendered the club a public accommodation subject to Title II); Evans v. Laurel Links, Inc., 261 F. Supp. 474, 477 (E.D. Va. 1966) (holding that a golf course offering its facilities for "[t]ournaments and team matches . . . affects commerce if it customarily presents athletic teams which move in commerce," making it a public accommodation which and not a private establishment). Accepting the Thorntons' assertions as true and viewing them in the light most favorable to them, the annual golf tournament, as in Evans, allowed non-member teams from out-of-state to participate.  Therefore, on this motion, SRCC must be deemed a place of public accommodation and subject to Title II.

Even when liberally construed and viewed in the light most favorable to them, however, the Thorntons' allegations fail to establish that SRCC discriminated against Thornton based on his religion.  Courts have employed two tests for religious discrimination under 42 U.S.C. § 2000a.  The first parallels the express language of Title II and determines a claim of discrimination in light of an alleged intentional act of disparate treatment by the defendant.

8

Arguello v. Conoco, Inc.,207 F.3d 803, 813 (5th Cir. 2000); see also Golden v. Biscayne

Bay Yacht Club, 521 F.2d 344, 351 (5th Cir. 1975).  The second determines a claim of

discrimination from analysis of a disparate impact of an otherwise neutral action on a

protected class.  See Olzman, 495 F.2d at 1341-42; see also Arguello, 207 F.3d at 803 nn.

11 & 12.

Here, there is no allegation which, if proven, would demonstrate intentional

discrimination against Thornton.  All that is alleged by the Thorntons are conclusory

allegations that SRCC prevented Thornton from attending religious events such as those

involving "The Little Sisters of the Poor"[5] and "Sienna Shootou."[6]  Compl. ¶¶ 98-101.

Groups utilizing the SRCC premises were entitled to hold private functions there for

weddings, meetings, and the like.  Such private functions required an invitation, much like

the weddings and barmitzvahs Thornton attended earlier at SRCC.  Compl. at ¶¶ 96-97.

There is no allegation here that Thornton was either invited to attend the events or that they

were open to the public at large.

Although the Thorntons allege that the aforementioned events made use of the publicly

accessible features of the club, that alone does not make these private gatherings public.

Thus, unless it is alleged that Thornton was personally invited to such functions at the

SRCC and that the SRCC prohibited him from attending, Thornton had no rights to intrude

---

[5]A Christian service organization with a location in Albany County affiliated with the Roman Catholic Church.  See Little Sisters of the Poor (visited Dec. 21, 2007) <http://www.lspusa.org>.

[6]Siena College is located in Albany County and "is a learning community advancing the ideals of a liberal arts education rooted in its identity as a Franciscan and Catholic institution."  Siena College (visited Dec. 21, 2007) <http://www.siena.edu>.

on these private parties.  The Thorntons have not alleged that Thornton was ever excluded

from an event at the SRCC which the public at large was entitled to attend or to which

Thornton was invited, let alone that any such exclusion was motivated by Thornton's

Christian religion.  Therefore, the Thorntons have failed to state a claim for intentional

discrimination by the SRCC.

Moreover, Thornton's membership was terminated pursuant to a facially neutral policy

stipulating that any member engaging in "conduct which, in the opinion of the Board, is

improper or prejudicial to the welfare or best interest of the club" was subject to termination.

SRCC Const. art. V § 10.  After pleading guilty to possession of child pornography, the

Board held a hearing to consider whether Thornton's conduct in this regard fell within this

provision.  After a majority of the Board voted in favor of his expulsion, Thornton received a

standard expulsion letter prohibiting him from utilizing the SRCC.  The Thorntons allege no

facts sufficient to demonstrate that the SRCC expulsion policy was a smokescreen to

conceal a discriminatory intent.  There are no factual, non-conclusory allegations which, if

credited, would establish that Thornton's religion played any role in the SRCC's decision to

terminate his membership.[7]  Beyond the conclusory allegations in the complaint, there are

no assertions of fact therein from which a finder of fact could reasonably conclude that

Thornton's religion rather than his conviction for possessing child pornography motivated

the SRCC action.  Thus, there are no sufficient allegations from which to find that either this

---

[7]As noted, Thornton had been a member of the SRCC for twenty-three years before
his termination as a member.

facially neutral expulsion policy[8] or the manner in which it was carried out constituted disparate treatment of Thornton or had a disparate impact on Thornton or Christians.

Thornton's discrimination claim in the second cause of action must be dismissed. Accordingly, SRCC's motion on this ground is granted.


## C. Tax Fraud Claim

The Thorntons assert in their first cause of action a claim under the provisions of the Federal Tax Code alleging that SRCC has been filing fraudulent tax returns and improperly claiming tax exempt status. However, "[p]rivate citizens cannot enforce the provisions of the Tax Code [because t]hat is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud." Seabury v. City of N.Y., No. 06-CV-1477 (NGG), 2006 WL 1367396, at *5 (E.D.N.Y. May 18, 2006) (citing

---

[8]Liberally construed, the complaint may also be viewed to assert a due process claim. However, because

> [SRCC] is a purely voluntary association, [it is] free to . . . provide for termination of membership of those who do not meet the standards fixed by [SRCC]. The constitution, by-laws and rules of government of [SRCC] . . . may condition membership upon any matter or deny membership entirely so long as rudimentary due process procedures are followed, and exclusions, suspensions, or expulsions from membership are reasonable, done in good faith, and are not discriminatory.

STP Corp. v. U.S. Auto Club, Inc., 286 F. Supp. 146, 170 (S.D.Ind. 1968). Thus, even though Thornton did not present evidence at his hearing, he was still afforded a hearing which he attended. This sufficed to provide Thornton with the required rudimentary due process. Additionally, even though he was expelled, the expulsion was reasonable and done in good faith. The complaint cannot fairly be read to allege otherwise. Accordingly, assuming a due process claim is made, the complaint fails to state a claim on that ground for which relief can be granted.

United States v. LaSalle Nat'l Bank, 437 U.S. 298, 308 (1978)).  District courts have "jurisdiction over civil actions against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." However, potential plaintiffs must "exhaust[ all] administrative remedies within the Internal Revenue Service and [are subject to] time limitations on filing suit."  Id. (citations omitted). Thus, in this case, the Court lacks jurisdiction over the Thorntons' tax claim because, as a private citizens, they cannot enforce provisions of the Tax Code and are not seeking to recover a tax alleged to have been illegally assessed against or collected from them.

Therefore, SRCC's motion on this ground is granted and the Thorntons' second cause of action is dismissed.


### D. State Law Claims

In their complaint, the Thorntons also allege three causes of action based on New York state law.  Federal courts have supplemental jurisdiction over such pendent state law claims pursuant to 28 U.S.C. § 1367. The Court, however, has dismissed the Thorntons' two federal claims on which federal jurisdiction over the pendent state law claims is based.  The Thorntons assert no other basis for the Court's jurisdiction over these claims and the Court declines to exercise supplemental jurisdiction over the Thorntons' state law claims. See 28 U.S.C. § 1367(c)(3); see also Quigley v. City of Syracuse, No. 5:03-CV-1198 (NAM/DEP), 2006 WL 2827884, at *15 (N.D.N.Y. Sept. 29, 2006). Accordingly, the third, fourth, and fifth causes of action are dismissed without prejudice.

### III.  Conclusion

For the reasons stated above, it is hereby

**ORDERED** that SRCC's motion to dismiss (Docket No. 6) be **GRANTED** as follows:

    1. The first and second causes of action are **DISMISSED** with prejudice as to all defendants;

    2. The third, fourth, and fifth causes of action are **DISMISSED** without prejudice as to all defendants; and

    3. The above-captioned action is **TERMINATED** as to all claims and all defenses.

Dated:  December 26, 2007
      Albany, New York

_____
United States Magistrate Judge